869 F.2d 595
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ekundayo Olusegun GBOLADE, Defendant-Appellant.
 No. 88-5016.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1988.
Decided: Feb. 15, 1989.
 
 Edwin Chrisco Walker, Assistant Federal Public Defendant (William E. Martin, Federal Public Defender, on brief), for appellant.
 Shelley Alexann Longmuir (Samuel Rosenthal, Chief, Appellate Section, Criminal Division, Department of Justice; Margaret Person Currin, United States Attorney, on brief), for appellee.
 Before ERVIN and WILKINSON, Circuit Judges, and JACKSON L. KISER, United States District Judge for the Western District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Ekundayo Olusegun Gbolade appeals the district court's denial of his motion for a judgment of acquittal. We affirm.
 
 I.
 
 2
 On June 13, 1987, the appellant Ekundayo Olusegun Gbolade attempted to purchase a ninety-eight dollar round-trip airline ticket with a fifty-dollar bill and five ten-dollar bills. The ticket agent, Cindy Hales, sold him a ticket and gave the appellant two dollars in change, but immediately suspected that the five ten-dollar bills she received from Gbolade were not genuine because the bills were yellow and slick, the serial numbers were unclear, and the portraits were hazy. Ms. Hales contacted her supervisors, who were also suspicious of the appellant's ten-dollar bills. The supervisors subsequently contacted the Raleigh Police Department.
 
 
 3
 Greg Kirkman, a detective with the Raleigh Police Department, arrived at the ticket counter and requested that Mr. Gbolade allow him to inspect all the money in Mr. Gbolade's possession. Upon inspecting Mr. Gbolade's money, Detective Kirkman suspected that not only the five original ten-dollar bills, but also twelve additional ten-dollar bills in Mr. Gbolade's possession were counterfeit. Consequently, Gbolade was escorted to a patrol car for transportation to a location where the police could investigate his situation further. Before entering the patrol car, however, Gbolade stated that the police would have to prove that his money was counterfeit. Gbolade subsequently repeated this statement a number of times.
 
 
 4
 On these facts, the defendant was tried and convicted on a two count indictment of possessing and passing counterfeit money in violation of 18 U.S.C. Sec. 472. During the course of the trial, the defendant made motions for acquittal at the close of the government's evidence and at the close of all of the evidence, but he never presented to the district court the issue on which he predicates his appeal, i.e. the fake bills did not meet the definition of counterfeit money.
 
 
 5
 In support of his position, the defendant relies primarily upon our decision in United States v. Ross, 844 F.2d 187 (4th Cir.1988), wherein we said that money is counterfeit within the meaning of Sec. 472:
 
 
 6
 ... if it bears such a likeness or a resemblance to a genuine obligation or security issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person supposed to be honest and upright.
 
 
 7
 Ross, 844 F.2d at 190.
 
 
 8
 Applying that test, we held that black-and-white machine copies of one side of a one-dollar bill, which could be detected as obvious fakes from a hundred feet, were not counterfeit money. That holding is of very little aid to the defendant in this case, however.
 
 
 9
 Ross is distinguishable from the present case on several grounds. Foremost are the procedural aspects of the two cases. In Ross, the defendant challenged the fake documents both by motions for acquittal on the ground that the documents did not meet the test for counterfeit money and by a requested instruction that encompassed the definition of counterfeit but was denied by the district court. Here the defendant did neither. The determination of counterfeit vel non is a factual determination to be made by the jury. By failing to submit a requested instruction, the defendant effectively conceded the issue.
 
 
 10
 Defendant strenuously urges that we should find, as a matter of law, that the fake bills do not qualify as counterfeit. Ross does not sustain this argument because of important factual differences with the case at bar. In Ross, the defendants had made a black-and-white copy of the front side of a dollar bill. All of the witnesses who testified stated that the reproductions were obvious fakes--one witness stated he could detect that they were fakes from a distance of one hundred feet. Here, the attempted reproduction, although crude, was at least sufficient to give pause as to the authenticity of the bills to several people. Both the ticket agent and her supervisors were initially suspicious of the bills, but did not finally conclude that they were not genuine until the arrival of a police detective. Under these circumstances, the most that the defendant was entitled to was a determination by the jury as to whether the bills met the definition of counterfeit.
 
 
 11
 Accordingly, the judgment of the district court is
 
 
 12
 AFFIRMED.